Greene v Orange Regional Med. Ctr.
2026 NY Slip Op 03948
June 24, 2026
Appellate Division, Second Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

Randi Greene, etc., appellant,
v
Orange Regional Medical Center, et al., defendants, Douglas Fletcher, etc., et al., respondents.

Supreme Court of the State of New York, Appellate Division, Second Judicial Department
Decided on June 24, 2026
2022-07615, (Index No. 9867/19)
Betsy Barros, J.P.
Helen Voutsinas
Lourdes M. Ventura
Donna-Marie E. Golia, JJ.

John H. Fisher, P.C. (Powers & Santola, LLP, Albany, NY [Michael J. Hutter], of counsel), for appellant.
Catania, Mahon & Rider, PLLC, Newburgh, NY (Jeffrey S. Sculley of counsel), for respondents.

[*1]
DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice and wrongful death, etc., the plaintiff appeals from an amended order of the Supreme Court, Orange County (James L. Hyer, J.), dated September 12, 2022. The amended order granted the motion of the defendants Douglas Fletcher and Middletown Medical, P.C., for summary judgment dismissing the complaint insofar as asserted against them.
ORDERED that the amended order is affirmed, with costs.
On November 25, 2018, the decedent, Matthew Greene, was admitted to the intensive care unit (hereinafter ICU) of Orange Regional Medical Center (hereinafter ORMC) due to complaints of fatigue, body aches, and shortness of breath. The next day, Douglas Fletcher, the ICU's attending physician, upon examining the decedent, included sepsis, pericarditis, and cardiac tamponade in his differential diagnosis, and arranged for the decedent to receive an echocardiogram. Emmanuel Nketiah, a staff cardiologist at ORMC, reviewed the echocardiogram, examined the decedent, and concluded that the decedent had a cardiac tamponade and that a pericardiocentesis procedure should be performed in order to drain fluid around the decedent's heart. Nketiah determined that the decedent's need for the pericardiocentesis procedure was not emergent and arranged for the decedent to undergo the procedure later that day. However, before the decedent underwent the procedure, he went into cardiac arrest and died.
The decedent's wife, individually and as administrator of the decedent's estate, commenced this action, inter alia, to recover damages for medical malpractice and wrongful death against, among others, Fletcher and his employer, Middletown Medical, P.C. (hereinafter together the defendants). The plaintiff alleged, inter alia, that Fletcher failed to ensure that a pericardiocentesis procedure was timely performed, and that this failure was a substantial factor in causing the decedent's death. Thereafter, the defendants moved for summary judgment dismissing the complaint insofar as asserted against them. In an amended order dated September 12, 2022, the Supreme Court granted the defendants' motion. The plaintiff appeals.
"'A defendant seeking summary judgment in a medical malpractice action bears the initial burden of establishing, prima facie, either that there was no departure from the applicable standard of care, or that any alleged departure did not proximately cause the plaintiff's injuries'" (Elstein v Hammer, 192 AD3d 1075, 1076, quoting Michel v Long Is. Jewish Med. Ctr., 125 AD3d 945, 945; see Messina v Rivera, 209 AD3d 1004, 1005). "'In opposition, the plaintiff must demonstrate the existence of a triable issue of fact as to the elements with respect to which the defendant has met its initial burden'" (Elstein v Hammer, 192 AD3d at 1076-1077, quoting Michel v Long Is. Jewish Med. Ctr., 125 AD3d at 945-946; see Clinkscales v Tostanoski, 241 AD3d 773, 777).
Here, the defendants established their prima facie entitlement to judgment as a matter of law dismissing the complaint insofar as asserted against them. "'Although physicians owe a general duty of care to their patients, that duty may be limited to those medical functions undertaken by the physician and relied on by the patient'" (Elstein v Hammer, 192 AD3d at 1078, quoting Aaron v Raber, 188 AD3d 967, 968; see Palazzolo v Green, 189 AD3d 1056, 1058-1059). In support of their motion, the defendants submitted, among other things, transcripts of deposition testimony, medical records, and the affirmation of an expert certified in internal medicine, pulmonary medicine, and critical care medicine, which demonstrated that Fletcher, who is not a cardiologist, reasonably relied on the judgment of Nketiah, ORMC's staff cardiologist, regarding the timing and urgency of the decedent's pericardiocentesis procedure. The defendants' expert established that he was familiar with the standard of care applicable to the assessment of cardiac conditions, including cardiac tamponade, by an ICU attending physician such as Fletcher, and opined that Fletcher did not depart from good and accepted medical practice by deferring to the treatment plan and assessment made by Nketiah, the consulting cardiologist, and relying on Nketiah's judgment in determining the timing and urgency of the decedent's pericardiocentesis procedure.
In opposition, the plaintiff failed to raise a triable issue of fact. "'[W]here a physician opines outside his or her area of specialization, a foundation must be laid tending to support the reliability of the opinion rendered'" (Roizman v Stromer, 185 AD3d 978, 981, quoting Behar v Coren, 21 AD3d 1045, 1047; see Pettway v Vorobyeva, 202 AD3d 1116, 1117). "Where no such foundation is laid, the expert's opinion is of no probative value, and is therefore insufficient to meet a party's burden on a summary judgment motion" (Roizman v Stromer, 185 AD3d at 981 [internal quotation marks omitted]; see Pettway v Vorobyeva, 202 AD3d at 1117). Here, the affirmation of the plaintiff's expert, an internal medicine physician with board certifications in cardiovascular disease and nuclear cardiology, lacked probative value as it did not indicate that the expert had any specific training or expertise in critical care, and failed to set forth how the expert was, or became, familiar with the standard of care applicable to ICU attending physicians like Fletcher (see Pettway v Vorobyeva, 202 AD3d at 1117; Roizman v Stromer, 185 AD3d at 981; Samer v Desai, 179 AD3d 860, 863). Moreover, the plaintiff's expert failed to address the assertions of the defendants' expert that it was appropriate for Fletcher to rely on Nketiah's judgment in determining the timing and urgency of the decedent's pericardiocentesis procedure (see E.G. v Alzoobaee, 237 AD3d 1052, 1053-1054; Elstein v Hammer, 192 AD3d at 1078).
Accordingly, the Supreme Court properly granted the defendants' motion for summary judgment dismissing the complaint insofar as asserted against them.
BARROS, J.P., VOUTSINAS, VENTURA and GOLIA, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court